**Terri L. STOREY, Plaintiff,**

v.

**CHASE BANKCARD SERVICES, INC., a Delaware corporation, Defendant.**

**No. CIV–96–2493–PHX–ROS.**

United States District Court,
D. Arizona.

July 21, 1997.

Rosemary Cook, Law Office of Rosemary Cook, Phoenix, AZ, for Terri L. Storey.

Terri L. Storey, pro se.

Thomas Derek Arn, Peter Christopher Prynkiewicz, Robert Kendall Jones, Streich Lang, P.A., Phoenix, AZ, for Chase Bankcard Services, Inc.

## ORDER

SILVER, District Judge.

Pending before the Court is Defendant's Motion to Dismiss Count One and Count Two of Plaintiff's Complaint for Failure to State a Claim Upon Which Relief can be Granted.

## BACKGROUND

On August 26, 1996, Plaintiff Terri L. Storey filed a complaint in the Superior Court of Maricopa County against Chase Bankcard Services, Inc., a Delaware corporation. On November 2, 1996, Defendant removed the action to this Court on the basis of diversity of citizenship.

Plaintiff's allegations are as follows. Plaintiff was employed as a Senior Collector by Defendant from on or about March 7, 1994 to August 31, 1995. (Compl.¶¶ 4, 12.) Plaintiff was subjected to sexual advances by her female manager, Julie DiPaola, on and after July 25, 1995. *Id.* ¶ 7. On or about August 18, 1995, Plaintiff verbally refused DiPaola's advances. *Id.* ¶ 8. In retaliation for Plaintiff's refusal of DiPaola's sexual advances, Plaintiff was not promoted and was suspended for three days. *Id.* ¶¶ 9, 10. Defendant failed to take appropriate steps to discipline DiPaola. *Id.* 16. In addition, other female employees were sexually harassed by DiPaola. *Id.* ¶ 6.

In Count One, Plaintiff alleges that Defendant violated the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41–1461 *et seq.*, by subjecting Plaintiff to a hostile working environment ("hostile environment" claim) in which her terms of employment were conditioned on sexual favors (quid pro quo claim), and that Plaintiff was terminated in retaliation for her complaints about DiPaola's conduct (retaliation claim). *Id.* ¶ 16.

In Count Two, Plaintiff alleges a wrongful termination in violation of public policy. *Id.* ¶ 22.

Plaintiff, in Counts Three and Four, also alleges causes of action for intentional infliction of emotional distress and wrongful retention/failure to supervise. *Id.* ¶¶ 25, 31, 32.

On November 8, 1996, Defendant filed a Motion to Dismiss Counts One and Two for failure to state claims upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Defendant does not seek dismissal of the claim of retaliatory discharge in Count One, (Def.'s Reply Mem. at 2 n. 1), or dismissal of Counts Three and Four, (Def.'s Mem. Supp. Dism. at 2 n. 1).

## *DISCUSSION*

In determining whether a complaint states a valid claim, all allegations of material facts are taken as true and construed in the light most favorable to the nonmoving party. *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989). A complaint should not be dismissed unless it appears beyond a doubt that a plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.), *cert. denied,* 506 U.S. 999, 113 S.Ct. 599, 600, 121 L.Ed.2d 536 (1992).

## *I. MOTION TO DISMISS COUNT ONE*

■ Defendant argues that Count One fails to state a claim because ACRA does not allow a claim for same–sex sexual harassment. The issue before the Court is whether sexual harassment of a female employee by another female coworker is actionable under ACRA. ACRA, provides in relevant part:

It is an unlawful employment practice for an employer: To ... discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's

race, color, religion, sex, age, handicap or national origin.

A.R.S. § 41–1463(B)(1).

This provision is essentially identical to a provision in Title VII of The Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2(a)(1).[1]

■ "[I]n enacting civil rights legislation which is substantially identical to the federal act, the Arizona legislature intended to accomplish the same objectives on the state level." *Civil Rights Div. of the Arizona Dep't of Law v. Superior Court,* 146 Ariz. 419, 706 P.2d 745, 750 (App.1985). Because ACRA is patterned after Title VII, decisions interpreting Title VII are regarded by Arizona's courts as persuasive authority in interpreting ACRA, unless any particular part of Title VII affords greater coverage. *Timmons v. City of Tucson,* 171 Ariz. 350, 830 P.2d 871, 875 (App.1991). No court has yet to apply ACRA in the context of same–sex sexual harassment, however, a substantial number of federal courts have ruled on whether Title VII covers such harassment. Plaintiff and Defendant agree that the Court's inquiry whether same–sex sexual harassment is actionable under ACRA is guided by Title VII jurisprudence.

### A. Analysis of the Plain Language of Title VII

The plain language of Title VII does not preclude a same–sex sexual harassment claim for relief because Title VII does not expressly require that sex discrimination involve members of the opposite sex. Title VII broadly prohibits "employers" (whether male or female) from discriminating against "individual" employees whether male or female on the basis of the latter's "sex" or gender.[2] *Wrightson v. Pizza Hut of America, Inc.,* 99 F.3d 138, 142 (4th Cir.1996). There is no indication within the language of the statute that Title VII actions are limited to the con-

---

1. The relevant part of Title VII, reads:
   It shall be unlawful for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex....
   42 U.S.C. § 2000e–2(a)(1).

2. The Supreme Court treats the term "sex" in Title VII as indicating "gender." *see Price Waterhouse v. Hopkins,* 490 U.S. 228, 239–41, 109 S.Ct. 1775, 1784–86, 104 L.Ed.2d 268 (1989) (referring to gender and sex interchangeably).

text of opposite gender. The only possible source for a condition that the harasser and victim be of different sexes is Title VII's causal requirement that the discrimination occurs "because of" the employee's sex. *Id.*

In the traditional sexual harassment case, in which a heterosexual makes an unwelcome advance toward a coworker of the opposite sex, courts have agreed that the harassment occurred "because of sex." This Court believes causation should similarly apply when a homosexual makes unwanted sexual advances to a same–sex coworker. Under Title VII, an employee is sexually harassed or discriminated against "because of" his or her sex if, "but–for" the employee's sex, he or she would not have been the victim of the discrimination.[3] *See Price Waterhouse v. Hopkins, supra; Bundy v. Jackson,* 641 F.2d 934, 942 n. 7 (D.C.Cir.1981) ("[I]n each instance the question is one of but–for causation: would the complaining employee have suffered the harassment had he or she been of a different gender?"). The language of "but–for" causation is not gender specific. If Plaintiff sets forth facts that she was harassed "but–for" her gender, then her claim is viable.

The guidelines of the Equal Employment Opportunity Commission ("EEOC") support the proposition that same–sex harassment may satisfy "but–for" causation.[4] The EEOC Compliance Manual states in pertinent part:

The victim does not have to be of the opposite sex from the harasser. Since sexual harassment is a form of sex discrimination, the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex. The victim and the harasser may be of the same sex where, for instance, the sexual harassment is based on the victim's sex (not on the victim's sexual preference) and the harasser does not treat employees of the same sex the same way.

Example 1—If a male supervisor of male and female employees makes unwelcome sexual advances toward a male employee because the employee is male but does not make similar advances towards female employees, then the male supervisor's conduct may constitute sexual harassment since the disparate treatment is based on the male employee's sex.

EEOC Compliance Manual (CCH) § 615.2(b)(3) (1987).

The Sixth Circuit in *Yeary* and the Eleventh Circuit in *Fredette* have applied the EEOC provision and reasoned, "when a male sexually propositions another male because of sexual attraction, there can be little question that the behavior is a form of harassment that occurs because the propositioned male is a male—that is, 'because of sex.'" *Fredette,* 112 F.3d at 1506 (quoting *Yeary,* 107 F.3d at 448). The Court finds this reasoning convincing. Because Title VII protections apply to both men and women, *see Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.,* 462 U.S. 669, 681–82, 103 S.Ct. 2622, 2630, 77 L.Ed.2d 89 (1983), this principle of causation equally applies to Plaintiff's claim. A homosexual female's unwanted ad-

---

**3.** The Fourth Circuit in *Wrightson* noted it was "plain from the several opinions in *Price Waterhouse* that all nine Justices agreed that 'but–for' causation is the appropriate standard under Title VII." 99 F.3d at 142 n. 2; *see Price Waterhouse,* 490 U.S. at 240 n. 6, 109 S.Ct. at 1785 n. 6 (plurality opinion) (Plaintiff does not have to show "but–for" cause to prevail, but "if she does so, she prevails"); *id.* at 259–60, 109 S.Ct. at 1795 (White, J., concurring in the judgment) *id.* at 262, 109 S.Ct. at 1797 (O'Connor, J., concurring in judgment); *id.* at 282, 109 S.Ct. at 1807 (Kennedy, J., dissenting).

**4.** EEOC guidelines, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgement to which courts and litigants may properly

resort for guidance...." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (citation omitted). Although the Court notes Defendant's argument that "the EEOC is a frequent loser in litigation" and "that not all of its arguments prevail," *Torres v. Nat'l Precision Blanking,* 943 F.Supp. 952, 956 n. 7 (N.D.Ill.1996) (rejecting the guideline), several courts, including the Fourth, Sixth, and Eleventh Circuits, have relied on this guideline in finding a cause of action for same–sex harassment. *See Fredette v. BVP Management Assoc.,* 112 F.3d 1503, 1505 (11th Cir.1997); *Yeary v. Goodwill Industries–Knoxville, Inc.,* 107 F.3d 443, 446 (6th Cir.1997); *Wrightson v. Pizza Hut of America, Inc.,* 99 F.3d 138, 143 (4th Cir.1996).

vances towards another female occur "because of sex." Plaintiff alleges her manager, DiPaola, made sexual advances towards her. Hence, Plaintiff may satisfy causation by proving her manager treated men and women differently, and that but–for Plaintiff's gender, Plaintiff was subject to sexual harassment.

## B. Legislative Intent

The legislative history of Title VII provides little guidance regarding the interpretation of the Act's prohibition against discrimination based on sex. *Meritor*, 477 U.S. at 64, 106 S.Ct. at 2404. The prohibition against discrimination based on sex was added to Title VII at the last minute on the floor of the House of Representatives. 110 *Cong. Rec.* 2577–84 (1964). Defendant claims that Congress's principal purpose of including the word "sex" in Title VII was to "do some good for the minority sex." [5] 110 *Cong. Rec.* 2577 (1964). Such a purpose, however, would be in harmony with protecting females in the workplace from sexual harassment by other females. Even if Congress had primarily focused on discrimination against women by male-dominated employers in passing Title VII, the Court notes the statute has not been so limited by the case law. Any original focus on discrimination against women has not precluded the courts from extending Title VII to protect men. *Newport News Shipbuilding*, 462 U.S. at 681–82, 103 S.Ct. at 2630 ("Male as well as female employees are protected against discrimination [under Title VII]."). Similarly, the Court concludes the legislative history does not preclude holding that same–sex harassment, in the circumstances before us, is actionable.

Defendant quotes Judge Niemeyer's separate opinion, not joined by either of the two judges on the panel, in *Hopkins v. Baltimore Gas & Elec. Co., supra:*

> In the context of Title VII's legislative history it is apparent [from legislative history] that Congress did not intend such sweeping regulation [to allow same–sex claims]. The suggestions that Title VII in-

tended to regulate everything sexual in the workplace would undoubtedly have shocked every member of the 88th Congress. . . .

77 F.3d 745, 751 (4th Cir.1996). In light of the broad statutory language and the paucity of legislative history on the subject, the Court is not persuaded by Defendant's conclusions. Defendant's legislative intent assumptions are irreconcilable with the Supreme Court's pronouncements in the landmark *Meritor* decision, recognizing a cause of action for sexual harassment. In *Meritor*, the Supreme Court found the broad rule of workplace equality under Title VII "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment" in order to provide a workplace free of "discriminatory intimidation, ridicule and insult." *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2404 (citations omitted). The breadth of this language supports the finding that same–sex harassment claims are covered under Title VII. The language of "disparate treatment of men and women in employment" does not require that harassment occur *between* men and women to be recognized. Disparate treatment of men and women occurs when a harasser targets members of a particular sex, regardless of the harasser's sex. Moreover, the *Meritor* Court was concerned not with the gender of the harasser, but with the perspective of the victim, stating that "the gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Id.* at 68, 106 S.Ct. at 2406 (citing 29 C.F.R. § 1604.11(a) (1985)). "Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets." *Id.* at 67, 106 S.Ct. at 2405

In light of the serious treatment sexual harassment receives under Title VII, the Court does not agree with Judge Niemeyer's conclusions but agrees with the district court

---

**5.** The Court assumes the term "minority sex" refers to women, even if women have always

been the majority in number.

in *Miller v. Vesta, Inc.,* 946 F.Supp. 697, 704 (E.D.Wis.1996), that "[t]he 88th Congress would find it more shocking that some federal courts today interpret Title VII as condoning on–the–job homosexual and other same sex harassment while prohibiting heterosexual harassment." The Court finds that the legislative intent of the statute supports an actionable claim under Title VII for a same–sex harassment claim.

### C. Survey of Case Law

To date, five circuits have addressed same–sex sexual harassment. The Fourth, Sixth, Eighth, and Eleventh Circuits have found same–sex sexual harassment actionable under Title VII. *See Fredette,* 112 F.3d at 1510; *Yeary,* 107 F.3d at 448; *Wrightson,* 99 F.3d at 143; *Quick v. Donaldson Co.,* 90 F.3d 1372 (8th Cir.1996).

The facts of these cases are similar to those alleged by Plaintiff, though Plaintiff and her alleged harasser are female. In *Yeary,* the plaintiff, a male cashier, alleged he was harassed and sexually propositioned by a male coworker in a number of instances, including one in which the coworker "pinned [the plaintiff] against the wall and began to whisper obscene comments about [the plaintiff's] physical appearance." *Yeary,* 107 F.3d at 444. The Sixth Circuit affirmed a district court's denial of a motion to dismiss, holding that Title VII allows a claim for same–sex harassment for conduct that is sexual in nature, after examining statutory language, case law expounding upon Title VII's causation requirement, and the EEOC's interpretation of the statute. *Id.* at 446–48.

In *Fredette,* the plaintiff, a male waiter, showed evidence he was repeatedly propositioned and offered employment benefits in exchange for sexual favors by his male manager. When the plaintiff refused, the manager retaliated against him in various ways. *Fredette,* 112 F.3d at 1504. The Eleventh Circuit reversed a summary judgment in favor of defendants, after finding that the plain language of Title VII provided protection to the plaintiff, that case law and the EEOC supported their conclusion, and that legislative history provided nothing to the contrary. *Id.* at 1509.

In *Wrightson,* the Fourth Circuit reversed a 12(b)(6) dismissal in which the plaintiff alleged harassment by five of his coworkers, who daily made sexual advances on him and pressured him to engage in homosexual sex. *Wrightson,* 99 F.3d at 139. The Fourth Circuit applied the "but–for" formulation of causation and found a same–sex "hostile work environment" claim could be asserted when a homosexual coworker discriminates against an employee of the same sex. *Id.* at 143.

The Eighth Circuit in *Quick,* 90 F.3d at 1378–79, relying heavily on case law and the *Meritor* decision, interpreted Title VII to allow a claim for same sex harassment even if directed against the plaintiff because of his perceived sexual orientation and not because of sexual attraction.

Additionally, in dicta, other circuit courts have indicated that same–sex harassment claims could potentially rest on Title VII. *See Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995) ("[W]e do not mean to exclude the possibility that sexual harassment of . . . men by other men, or women by other women would not also be actionable in appropriate cases."); *Bundy v. Jackson,* 641 F.2d 934, 942 n. 7 (D.C.Cir.1981) (noting that harassment could be actionable where a homosexual supervisor harasses an employee of the same gender).

Further, the Ninth Circuit has indicated, without deciding, that Title VII covers same–sex harassment. In a hostile environment case, the Ninth Circuit responded to the defendant's objection that its male employee did not sexually harass the female plaintiff because he was vulgar and insulting to both men and women. The Ninth Circuit responded that it did "not rule out the possibility that both men and women . . . [could] have viable claims against [the male employee] for sexual harassment." *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463 (9th Cir. 1994); *cert. denied,* 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995). In *Blueford v. Prunty,* 108 F.3d 251, 254 (9th Cir.1997), a case involving a male prisoner who claimed he was sexually harassed by a male prison guard, the Ninth Circuit acknowledged the favorable same–sex harassment language in

*Steiner* and proceeded to find the facts of the harassment claim did not constitute quid pro quo sexual harassment. The *Blueford* court also noted that the "pendulum seems recently to have swung in favor of permitting same–sex harassment claims...." *Id.* at 255. This Court agrees with the Ninth Circuit in *Blueford* and finds the weight and logic of case law support the finding that Title VII covers same–sex harassment claims.

Only the Fifth Circuit has not found same–sex sexual harassment actionable under Title VII. *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446 (5th Cir.1994). The Fifth Circuit holding in *Garcia* was not supported by reasoning but simply a terse statement from an unpublished opinion that "[h]arassment by a male supervisor against a male subordinate [does] not state a claim under Title VII even though the harassment has sexual overtones. Title VII addresses gender discrimination." 28 F.3d at 451 (citation omitted). In *Oncale v. Sundowner Offshore Services, Inc.*, 83 F.3d 118, 119 (5th Cir.1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 2430, 138 L.Ed.2d 192 (1997), the Fifth Circuit acknowledged *Garcia* as binding precedent despite its rejection by several district courts. Without providing persuasive reasoning for the holding in *Garcia,* the Fifth Circuit panel stated that it "could not overrule the decision, right or wrong, of a prior panel in absence of an intervening contrary or superceding decision by the court *en banc* or the Supreme Court." *Id.*

Although the Supreme Court has yet to rule on whether a same–sex sexual harassment Title VII claim is legally cognizable, this Court believes the Supreme Court's re-verse discrimination decisions support finding that Title VII allows the same–sex harassment claim before this Court.[6] Cases such as *Newport News Shipbuilding* suggest that a Title VII claim does not turn on whether the alleged harasser is male or female. Additionally, in other areas of sex discrimination in employment, the Supreme Court is not concerned whether the victim and alleged discriminator are of the same sex. *See Johnson v. Transportation Agency, Santa Clara County,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987). In *Johnson,* a male plaintiff brought a Title VII action for sex discrimination based on the county's decision to promote a female applicant to the position of road dispatcher. The facts of the case demonstrate the alleged discriminatory decision was made by another man. *Id.* at 624–26, 107 S.Ct. at 1447–49. Despite the fact that the allegation was one of same–sex discrimination, the Court addressed the merits of whether a Title VII violation had occurred.

Numerous district courts also have examined the cognizability of same–sex harassment under Title VII. These decisions reveal a trend in favor of Title VII coverage.[7] At least two district courts in the Ninth Circuit have found that same–sex harassment claims may be brought. *See Tanner v. Prima Donna Resorts, Inc.,* 919 F.Supp. 351 (D.Nev.1996); *Easton v. Crossland Mortgage Corp.,* 905 F.Supp. 1368 (C.D.Cal.1995), *rev'd on other grounds,* 114 F.3d 979. In *Tanner,* the Nevada district court denied a 12(b)(6) motion to dismiss against a complaint alleging same–sex quid pro quo and hostile environment sexual harassment. *Id.* at 355.

---

6. Defendant notes that the Supreme Court has recently granted *certiorari* to decide this issue. *See Oncale v. Sundowner Offshore Services, Inc.,* —— U.S. ——, 117 S.Ct. 2430, 138 L.Ed.2d 192 (1997).

7. *See, e.g., McCoy v. Johnson Controls World Servs., Inc.,* 878 F.Supp. 229 (S.D.Ga.1995) (denied 12(b)(6) motion of a female against female hostile environment claim); *Ryczek v. Guest Servs.,* 877 F.Supp. 754 (D.D.C.1995) (female homosexual quid pro quo and hostile environment claims legally cognizable); *Wright v. Methodist Youth Servs., Inc.,* 511 F.Supp. 307 (N.D.Ill.1981) (male homosexual quid pro quo claim action-

able); *Johnson v. Community Nursing Services,* 932 F.Supp. 269 (D.Utah 1996) (female homosexual quid pro quo and hostile environment claims viable); *Polly v. Houston Lighting and Power Co.,* 825 F.Supp. 135 (S.D.Tex.1993); *Sardinia v. Dellwood Foods, Inc.,* 1995 WL 640502, at *4–5 (S.D.N.Y. Nov. 1, 1995) (finding it "untenable to allow reverse discrimination cases but not same–sex sexual harassments to proceed under Title VII"); *Waag v. Thomas Pontiac, Buick, GMC Inc.,* 930 F.Supp. 393 (D.Minn.1996); *Griffith v. Keystone Steel and Wire,* 887 F.Supp. 1133 (C.D.Ill.1995); *King v. M.R. Brown, Inc.,* 911 F.Supp. 161 (E.D.Pa.1995); *Ecklund v. Fuisz Tech., Ltd.,* 905 F.Supp. 335 (E.D.Va.1995).

The district court held that same–sex harassment claims are actionable under Title VII because such harassment occurs "because of sex." *Id.* In *Easton*, 905 F.Supp. at 1371, three female former employees brought action against their female employer and supervisors for sexual harassment. The Central District of California held that a same–sex quid pro quo claim could be made under Title VII, after determining that the plain language of Title VII and the trend of case law supported a cause of action. *Id.* at 1379–80. The district court then granted summary judgment to the defendants on the facts; the defendants neither sexually propositioned the plaintiffs nor created a hostile work environment. *Id.* at 1380. One district court in the Ninth Circuit has held that same–sex harassment by a supervisor is not actionable under Title VII. *Ashworth v. Roundup Co.*, 897 F.Supp. 489 (W.D.Wash. 1995) (granting summary judgment to the defendant).

Defendant cites several cases to support its claim that same–sex sexual harassment is not actionable. *See Garcia, supra; Ashworth, supra; Vandeventer v, Wabash Nat'l Corp.*, 867 F.Supp. 790 (N.D.Ind.1994); *Hopkins v. Baltimore Gas & Elec. Co.*, 871 F.Supp. 822 (D.Md.1994), *aff'd*, 77 F.3d 745 (4th Cir.1996); *Myers v. City of El Paso*, 874 F.Supp. 1546 (W.D.Tex.1995); *Benekritis v. Johnson*, 882 F.Supp. 521 (D.S.C.1995); *Torres v. Nat'l Precision Blanking*, 943 F.Supp. 952 (N.D.Ill.1996). This Court does not find the reasoning of these decisions as compelling as those finding a Title VII cause of action. First, many of the cases which did not find an actionable claim under Title VII, including *Goluszek, Ashworth*, and *Vandeventer*, are distinguishable because they involve non–sexual same–sex harassment. In *Goluszek*, 697 F.Supp. at 1454, a male plaintiff claimed that male coworkers accused him of being homosexual or bisexual, poked him in the buttocks with a stick and made lewd comments about him. In *Vandeventer*, 867 F.Supp. at 796, the district court found "no evidence the employee was harassed because he was male." The Western District of Washington in *Ashworth* made no determination whether the alleged harassment was because of sex or perceived sexual–orientation.

The *Ashworth* court found, however, that "the conduct in the case ... closely resemble[d] the situation in *Goluszek*." 897 F.Supp. at 494. Non–sexual same–sex harassment requires a different analysis of Title VII's "because of sex" causation. This Court need not address whether non–sexual or non–sexually motivated same–sex harassment is actionable under Title VII because Plaintiff's complaint distinctly alleges sexually–motivated sexual harassment. Additionally, the holdings in *Hopkins* and *Benekritis* that same–sex harassment is not viable under Title VII, have been overturned by the Fourth Circuit decision in *Wrightson*, 99 F.3d at 143.

Finally, all of the decisions cited by Defendant rely expressly or implicitly on the questionable reasoning of *Garcia* or *Goluszek*. In *Garcia*, the Fifth Circuit, the sole circuit court holding same–sex harassment is non–actionable under Title VII, provided no reasoning for its conclusion. 28 F.3d at 451. *Goluszek* is the leading opinion holding that same sex claims are not legally cognizable under Title VII. In *Goluszek*, the Northern District of Illinois held that Congress did not intend for Title VII to protect against same–sex harassment, stating:

> The discrimination Congress was concerned about when it enacted Title VII is one stemming from an imbalance of power and an abuse of that imbalance by the powerful which results in discrimination against a discrete and vulnerable group. Note, *Sexual Harassment Claims of Abusive Work Environment Under Title VII*, 97 Harv. L.Rev. 1449, 1451–52 (1984) ... The "sexual harassment" that is actionable under Title VII "is the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person."

*Id.* at 1456.

The Court finds *Goluszek*'s conclusions unconvincing. The law is well established that Title VII protects both men and women without regard to whether the workplace is male–dominated. *See Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616, 634, 107 S.Ct. 1442, 1453, 94 L.Ed.2d 615

(1987). Moreover, the district court reached its findings without analyzing legislative history and considered the broad–reaching *Meritor* decision to be not on point. *Goluszek,* 697 F.Supp. at 1455 ("The [Supreme] Court [in *Meritor* ] did little to define the parameters of a hostile environment claim...."). The district court in *Williams v. District of Columbia,* 916 F.Supp. 1 (D.D.C.1996), lists several compelling analytical flaws with *Goluszek*'s reasoning:

> First, the support underlying its central proposition came not from Congress, but from a law student. Second, the student note was written long before the Supreme Court even handed down *Meritor Savings Bank.* Third ..., "there is nothing in the language of Title VII to support a finding that same–sex harassment is not prohibited.... On the contrary, the language of the statute is non–exclusive, creating a broad rule of workplace equality. Title VII makes discrimination at the workplace on the basis of gender equality illegal, period." Fourth, *Goluszek* departs from *Meritor*'s clear command that "when a supervisor sexually harasses a subordinate because of the subordinate's sex, the supervisor discriminates on the basis of sex....." [L]ast, the harms resulting from same–sex harassment are no less severe than those perpetrated by harassers of the opposite sex.

*Id.* at 8–9 (citations omitted). "Remarkably, to articulate Congress' feat the Goluszek court relied solely upon a student author's note, a feat even more remarkable in that the student author was not even discussing congressional intent." *Id.* at 8–9 n. 7.

■ *Goluszek* further reasoned that the conduct of the harassing, same–sex male co–workers does not create or reflect an anti–male environment, and is therefore not actionable under Title VII. 697 F.Supp. at 1456. Using similar logic, the district court in *Hopkins* observed:

> [I]t also seems peculiar to call sexual harassment of ... a female by a female, sex discrimination ... What the harasser is really doing is preferring or selecting some one member of his own gender for sexual attention.... He certainly does not despise the entire group, nor does he wish to harm its members, since he is a member himself and finds others of the group sexually attractive.

871 F.Supp. at 833 (citations omitted). This Court disagrees with these observations. Title VII "does not require that the work environment be hostile to all worker's of the plaintiff's sex; it requires that the environment be hostile to the plaintiff." *Tanner,* 919 F.Supp. at 354. *Hopkins*' requirement that the harasser despise or desire to harm a particular group is also inappropriate. First, this requirement is incompatible with the Supreme Court's statement in *Meritor,* that "[t]he gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.' " *Meritor,* 477 U.S. at 68, 106 S.Ct. at 2406. Second, it can be reasonably inferred that in many instances when a heterosexual male sexually propositions a female coworker, he does so not because he despises females, but because he finds the female sexually attractive "making advances towards the victim because the victim is a member of the gender the harasser prefers." *Fredette,* 112 F.3d at 1504.

This Court agrees with the Sixth Circuit's finding that same–sex harassment should not be viewed differently than the "traditional" notions of sex discrimination actionable under Title VII. The Sixth Circuit observed:

> [T]his case is about as traditional as they come albeit with a twist. It is about an employee making sexual propositions to ... a coworker because, it appears, he finds that coworker sexually attractive. This is a scenario that has been found actionable countless times over, when the aggressor is a male and the victim is a female. Likewise, there is no serious question that the same scenario would be actionable in the less typical case when the aggressor is a female and the victim is a male. Consequently, we find no substantive difference between either of those situations and that presented here.

*Yeary,* 107 F.3d at 448. If Plaintiff had alleged a male supervisor committed the alleged harassment, or if Plaintiff were male and alleged harassment by DiPaola, there is no question that Plaintiff would have a cause

of action. Without statutory language or legislative intent indicating otherwise, and in light of persuasive case law, the Court sees no logical distinction in denying Plaintiff an actionable claim under Title VII simply because her alleged harasser is of the same sex.

### D. Hostile Environment Claim

Plaintiff alleges DiPaola's sexual harassment created a "hostile environment." In "hostile environment" cases, a plaintiff works in an offensive or abusive environment. *Ellison v. Brady*, 924 F.2d 872, 875 (1991). A plaintiff demonstrates a hostile environment exists if she shows (1) that she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter conditions of her employment and create an abusive working environment. *Id.* at 875. An environment is hostile if a reasonable member of the victim's gender would find the alleged harassment had created a hostile work environment. *Id.* at 878. Plaintiff has alleged sufficient facts that establish an actionable claim under Title VII. Thus, dismissal of Plaintiff's hostile environment claim is inappropriate.

### E. Quid Pro Quo Claim

Defendant has only addressed Plaintiff's claim under the hostile environment theory, but Plaintiff's Complaint also states a claim under the "quid pro quo" theory of sexual harassment. In "quid pro quo" cases, a plaintiff can prevail by showing her employment, benefits derived from her employment, or avoidance of the adverse conditions of her employment were implicitly or expressly conditioned upon her acceptance of a supervisor's sexual advances. *Nichols v. Frank*, 42 F.3d 503, 511 (9th Cir.1994). Plaintiff has stated a claim in which she is entitled to relief under this formula by alleging that she was denied a promotion because she refused DiPaola's sexual advances. (Compl.¶ 9). This Court finds that Congress did not intend to restrict "quid pro quo" claims to opposite–sex harassment.

### F. Retaliation Claim

Finally, Plaintiff alleges retaliation under the ACRA statute. ACRA provides that an employer cannot discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter" or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." A.R.S. § 41–1464. This section is essentially identical to Title VII, 42 U.S.C. § 2000e–3. To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate (1) she was engaging in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between the protected activity and the adverse employment decision. *Wrighten v. Metropolitan Hosp., Inc.*, 726 F.2d 1346, 1354 (9th Cir.1984). Defendant, however, does not seek to dismiss this claim. (Def.'s Reply Mem. at 2 n. 1.)

This Court holds that all charges in Count One are cognizable under Title VII. Defendant has not offered arguments that the Arizona Supreme Court would apply ACRA more narrowly than federal courts apply Title VII. This Court applies ACRA as it believes the Arizona Supreme Court would, and finds that ACRA recognizes a same–sex harassment claim under the circumstances before the Court.

Accordingly, Defendant's Motion to Dismiss Count One will be denied.

### II. MOTION TO DISMISS COUNT TWO

Plaintiff agrees with Defendant's objection that the Arizona Employment Protection Act, A.R.S. § 23–2501(3)(b), preempts any public policy tort based on ACRA and agrees to dismiss Count Two with prejudice. (Pl.'s Opp'n. Def.'s Mot. to Dismiss at 8.) Count Two will be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Count One of Plaintiff's Complaint (Doc # 2) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Count Two of Plaintiff's Complaint (Doc # 2) is granted.